IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

    Plaintiff,

    vs.

RICARDO MENDOZA-MORALES,
OCTAVIO MENDOZA-MORALES,
HERIBERTO MONTENEGRO-MÉNDEZ,
HECTOR RICARDO VILLARUEL-LOPEZ,
OSCAR AGUIRRE,SANCHEZ,
JOSE NATIVIDAD RIOS-RUIZ,
JOSE SALINAS-CORREA, OMAR
VASQUEZ-CHAVEZ, and JESUS
FLORES-GARCIA,

    Defendants.
_____

CR 05-98-RE

OPINION

REDDEN, Judge:

    The matters before me are pretrial motions filed by defendants in this case. Oral arguments on the motions were held October 14 and 19, 2005.

    On November 2, 2005, I filed a minute order, as amended on November 7, 2005, resolving the pretrial motions, with this opinion to follow. Pursuant to the November 7, 2005, minute order, the wiretap motions, motions for reconsideration of the Franks hearing, and motions dependent on resolution of the wiretap motions will be resolved once supplemental briefing is completed.

1 -    OPINION

1. **Vasquez-Chavez – Motions to Suppress Evidence and Statements.**

   (a) **Statements**.

   Defendant moves to suppress statements he made to agents on the day of his arrest. He argues the statements he made were without <u>Miranda</u> warnings, and after threatening and coercive comments by the agents.

   In April 2005, Washington County Sheriff's deputies came to the residence of Vasquez-Chavez in Gaston, Oregon, and told him that a Mazda car registered to defendant's fiancee was found abandoned in Hillsboro. Defendant says the deputies told him if he did not retrieve the car, it would be towed and he would incur towing and storage costs.

   Defendant says that the DEA had actually stolen the car, which contained drugs, from an associate of Mendoza-Morales. Defendant acknowledges he had purchased the car and the title and registration were in his name, but asserts he never took possession of it. After the deputies' report, he decided this was his opportunity to take possession.

   Defendant and his fiancee went to Hillsboro to retrieve the car. Defendant says he inspected the car, concluded it had not been stolen, and took it back to his residence. He says that later, DEA agents came to his house and told him "he was in big trouble with a drug conspiracy." Def. Memo., p. 2. He says the agents told him they would take his children from his fiancee and himself if he did not cooperate. Apparently, defendant thereafter made incriminating statements.

   Agent Poikey was one of the law enforcement officers who went to defendant's home for his arrest. He gave credible testimony that there were no threats made at that time defendant made his statements. Specifically, he testified no threats were made that defendant's children could be taken from his finance or that she might be prosecuted too if he didn't consent to a search.

   I conclude the evidence before the court supports a conclusion that defendant's statements were voluntary and uncoerced, and were made only after he had been given

Miranda warnings. The evidence supports a conclusion that defendant acknowledged he understood the English language and willingly agreed to speak to the agents.

Vasquez-Chavez's motion to suppress statements is denied.

**(b)** **Evidence**.

On March 12, 2005, law enforcement agents and officers executed a search warrant at 31330 N.W. Scotch Church Road in Hillsboro. The warrant included all structures on the property and permitted agents to look for documents, narcotics, and firearms. A search of the barn yielded Vasquez-Chavez's 1990 Lincoln Town Car. The agents towed it to a secure local law enforcement facility where it was stored until a second warrant for the car was issued to search. The second warrant was executed on March 15th, and agents found drugs and a firearm in the car.

Defendant seeks suppression of evidence based on arguments of warrantless searches and probable cause requirements. Defendant's arguments have no merit. The first search warrant was valid and properly executed. A search warrant authorizing a search extending to the curtilage of a specified property permits the search of a car located within the curtilage. United States v. Vaandering, 50 F.3d 696, 701 (9th Cir. 1995). An *in situ* search of defendant's car would have been permissible under the authority of the Scotch Church Road property warrant.

Even so, in an abundance of caution, agents sought a subsequent warrant to search the car. The agents had ample grounds for temporarily seizing the car while they obtained the second search warrant. A temporary seizure of person or property while obtaining a warrant is not unreasonable provided law enforcement (1) had probable cause to believe the object being seized contained contraband and evidence of crime; (2) had good reason to fear the evidence would be destroyed or concealed before a warrant could be obtained; (3) made "reasonable efforts to reconcile their law enforcement needs with the demand of personal privacy," and (4) imposed the restraint no longer than reasonable necessary to obtain a warrant, acting with diligence. Illinois v. McArthur, 531 U.S. 326, 331-32 (2001). All these requirements were met in this case.

Vasquez-Chavez's motion to suppress evidence is denied.

2. **Villarruel-Lopez – Motion to Suppress Evidence and Statements**.

The government obtained a search warrant that authorized the search of defendant Villarruel-Lopez's residence.

Defendant's motion to suppress is based on the following events, which he says come from the report filed by DEA Agent Karin Pacheco. On March 12, 2005, at approximately 6:15 a.m., agents executed the warrant at defendant's residence. Agents knocked on the door and, after about 15 seconds, defendant answer the door. Agents immediately entered the house. There were four individuals in the household, defendant, his fiancee, and two minor children.

Prior to searching the residence and vehicles, Agent Pacheco read the search warrant in English to defendant and his fiancee. They both replied in English that they understood. Agent Pacheco then asked if any drugs, money, or weapons would be located in the house. Villarruel-Lopez indicated the location of some money in his bedroom drawer, contraband in the lawn mower bag in the shed, and an old rifle in the garage.

After she made the inquiry about money, contraband, or weapons, Agent Pacheco read defendant and his fiancee their Miranda rights. Defendant stated he would not answer any questions. No attempt was made to speak with him in Spanish.

At about 6:40 p.m., agents briefly questioned defendant's fiancee. The search of the residence and vehicles began at approximately 7:00 a.m. Agents discovered approximately 395.6 gross grams of methamphetamine in a Tupperware container and 35.1 grams in a magnetic key holder, both contained in the lawn mower bag in the shed, as well as 37.6 grams located in a vehicle on the premises. Agents also seized an electronic scale, empty magnetic key holder, and plastic packaging material.

Defendant argues that when the agents entered his house with federal search and arrest warrants, detaining the handcuffed defendant and his fiancee, defendant was in custody for Miranda purposes. Defendant asserts that Agent Pacheco's query to defendant about drugs, money, or firearms was interrogation by express questioning that was

4 -   OPINION

reasonably likely to elicit an incriminating response. Therefore, he argues, all statements made by defendant prior to his Miranda warnings must be suppressed.

Both defendant and Agent Pacheco testified extensively at the evidentiary hearing. As to defendant's statements, the issue is the chronology of the events. Defendant asserts the order of events was as listed on page 2 of Agent Pacheco's report. Paragraph 2 of the report deals with a statement made by defendant in response to questioning by the agent. In the next paragraph, there is a notation that Miranda warnings were administered. Thus, if the paragraphs in the report reflect the chronology of events, defendant's statements were made prior to Miranda warnings being given.

Agent Pacheco testified that she made an error in writing the report. She testified that she did administer Miranda warnings before defendant made his statements.

The exclusionary rule does not require suppression of evidence if the inevitable discovery doctrine applies. United States v. Lang, 149 F.3d 1044, 1047 (9th Cir. 1998) (even with a Miranda violation, evidence would have been inevitably found). The government argues it does not matter if defendant's statements were made before or after Miranda warnings because the execution of that warrant would have produced the narcotics completely separate from any conversation with defendant, whether in compliance with Miranda or not.

I agree with the government. I conclude there was a reasonable probability of discovery of the money and narcotics prior to Agent Pacheco's alleged failure to give Miranda warnings, based on the information possessed and investigations being pursued at the time. The agents were at the house pursuant to a search warrant that was supported by a probable cause affidavit. Agent Pacheco testified that the search resulted in narcotics and money being found where defendant said they would be, but also found in places he did not mention. Agent Pacheco testified to her extensive experience in serving warrants and conducting searches. No evidence was found in any unusual place that an experienced agent would not think to search. The only possible exception was defendant's mention of his lawn mower bag, and the later discovery of evidence in that bag. However,

Agent Pacheco testified that in a prior case she had found narcotics in a lawn mower bag so she would have searched defendant's lawn mower bag even without his mention of it. I conclude the execution of that warrant would have produced the narcotics and money completely separate from any conversation with defendant, whether in compliance with Miranda or not.

Thus, even if I were to resolve the factual dispute about the chronology of the Miranda warning in defendant's favor, the inevitable discovery doctrine applies and the evidence cannot be suppressed on the basis of violation of the exclusionary rule regarding statements.

Defendant's motion to suppress evidence is denied. Defendant's motion to suppress statements is denied as moot.

**3.      Salinas-Correa – Motions to Suppress Evidence and Statements.**

**(a)      Statements.**

Defendant moves to suppress statements he made to agents on the day of his arrest. The government has responded that, after further discussions with the agents, it believes the statements made by defendant at the time of his arrest were not preceded by Miranda warnings. Therefore, the government will not offer the statements as evidence in its case-in-chief, but reserves the right to use them as impeachment should defendant elect to testify.

Defendant's motion is granted.

**(b)      Evidence.**

Defendant moves to suppress evidence seized pursuant to the search warrants of the residences located on Tarrybrook Drive in Cornelius and Heritage Parkway in Beaverton. He asserts there was insufficient probable cause to search the residences. He asserts the warrants did not contain sufficient particularity to cover the documents actually seized. He also assert the warrants were overbroad and invalid. Defendant has provided the court with no factual background relating to his arguments.

The affidavit that supported the search warrants, signed by Magistrate Judge Jelderks, is 35 pages long and includes a detailed itemized list of items to be searched for and seized. Both residences mentioned by defendant were covered by the search warrant. The agents found incriminating evidence at both locations based on their objective good faith reliance on a facially valid warrant, and therefore that evidence is not subject to suppression. United States v. Leon, 468 U.S. 897, 920-26 (1984).

Defendant's motion is denied.

**4.     Motion to Produce Confidential Informant**.

Defendants move for disclosure of both the identities and benefits accorded any confidential informants in this case. Defendants argue they need this information to test the informants' credibilities, ascertain their general relationship to others charged, discover the entire scope of their meetings, conversations, and contacts with the principals herein, and investigate the informants' allegations. Defendants do not name the specific confidential informants about whom they request information. However, it is likely they are referring to those mentioned in the early part of Agent Poikey's affidavit supporting the wiretap order.

Defendants argue that fairness requires courts to balance the government's need to withhold the identity of an informant against the defendant's need for the information in a particular case. Roviaro v. United States, 353 U.S. 53, 62 (1957). Defendants argue that the public's interest in protecting the identity of confidential informants must give way in this case because disclosure of the informants' identities is relevant and helpful to the defendants' defense and essential to a fair determination of their cases. Defendants argue that with conspiracy charges, such as those at issue here, disclosure and protection of confidential informant information is mandatory if that person may have information regarding either a knowing membership in the conspiracy or possible entrapment. United States v. Miramon, 443 F.2d 361, 362 (9th Cir. 1971).

The government points out that the confidential informants mentioned on page 10 of Agent Poikey's affidavit are far removed from the facts the defendants and government

7 -     OPINION

will attempt to prove at trial. For instance, the government says, it is obvious from Agent Poikey's affidavit that CS#1 is a mere "tipster" who is passing along information he is hearing, and the government has a legitimate interest in protecting "tipster" information from retaliation. The government also points out that CS#2 is several steps removed from any activity that the government will attempt to prove. From both CS#1 and CS#2, the agents learned that a individual referred to as "Pelon" was arrested in California. That individual was later identified as Marco Mendoza-Morales, who is not a defendant in this case but rather the brother of the lead defendant in this case Ricardo Mendoza-Morales. CS#2 told the government the particular telephone number he had previously used to contact "Pelon" was answered by a new individual who was willing to sell narcotics. That individual was identified as Hosvaldo Lopez, who is also not a defendant in this case. Therefore, the government argues, the information on CS#2 would led only to an individual now known to all defendants because he is identified.

I conclude that, absent any specifics about the information or individuals covered by their motion, the motion must be denied.

**5.     Motion to Sever Counts.**

Defendants seek an order severing the counts of the indictment, arguing joinder has a prejudicial effect.

Rule 8(a) of the Federal Rules of Criminal Procedure provides that two or more offenses may be charged in the same indictment only if they "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Even if joinder of the counts is not prejudicial *per se* under Rule 8(a), the prejudicial effect of joining the counts requires severance. Rule 14 of the Federal Rules of Criminal Procedure provides that "[i]f it appears that a defendant . . . is prejudiced by a joinder of offenses . . . the court may order an election or separate trials of counts. . . ." The primary concern is whether the jury will be able to segregate the evidence to each count. United States v. Vaccaro, 816 F.2d 443, 448-49 (9th Cir. 1987). "[J]oinder is the rule rather than the

8 -     OPINION

exception." United States v. Armstrong, 621 F.2d 951, 954 (9th Cir. 1980). Defendants requesting severance carry the burden "to show that joinder was so manifestly prejudicial that it outweigh the dormant concern with judicial economy." Id.

I deny this motion. Defendants have not indicated which of the 10 counts in the superseding indictment they seek to sever. The first count charges conspiracy to distribute several controlled substances, and the remaining nine counts charge specific seizures of controlled substances that were the direct result of the conspiracy charged in the first count. Thus, I conclude the counts are all "parts of a common scheme or plan" required under Rule 8.

As to prejudicial effect, defendants do not provide facts to support the argument for prejudice even though the evidence necessary to establish counts 2 through 10 is also admissible as proof of the conspiracy charges in count 1. Of course, the jury will have to be instructed that it must deliberate on the counts separately. This is a safeguard against any possible prejudice that may arise from a trial of multiple counts in one indictment. See United States v. Fiorillo, 186 F.3d 1136, 1145 (9th Cir. 1999).

**6.    Motion to Sever Defendants - Vasquez-Chavez.**

Vasquez-Chavez, and other defendants who have joined, seek an order severing their trials from those of other defendants. Rule 8(b) of the Rules of Federal Criminal Procedure permits an indictment to charge two or more defendants if they participate in the "same act or transaction, or in the same series of acts or transactions, constitute an offence or offences." Even when joinder is proper, Fed. R. Crim. P. 14 permits the court to exercise its discretion to avert prejudice to a defendant. Fed. R. Crim. P. 14 provides that "[i]f it appears that a defendant . . . is prejudiced by joinder of offenses or of defendants in an indictment . . . the court may order . . . separate trials of counts, grant a severance of defendants or provide what other relief justice requires."

Defendants argue that without severance they may be denied the use of a co-defendant as exculpatory testimony. Specifically, defendants argue that co-defendants may offer exculpatory testimony for them at a separate trial, but will likely assert the Fifth

Amendment right to remain silent at a joint trial. However, defendants provide little or no detail as to what a co-defendant may testify or what they may testify about. Without a strong showing that specific testimony would "substantially exculpate" the defendants seeking joinder, joinder should be denied. See United States v. Pitner, 307 F.3d 1178 (9th Cir. 2002). Defendants have not made such showing.

Defendants also argue that they may be in a position to demand immunity for a co-defendant in order for that co-defendant to give the kind of testimony that would tend to exculpate them. Defendants, however, identify no such co-defendant or expected testimony. Further, a district court does not have the power to grant use immunity or the power to force the government to grant such immunity. See United States v. Duran, 189 F.3d 1071 (9th Cir. 1999).

Defendants also argue being forced to go to trial with co-defendants would be unfair because of guilt by association. The Ninth Circuit has rejected this argument, holding that juries can compartmentalize evidence and follow the court's instructions that each defendant be judged separately from the others. See United States v. Johnson, 927 F.3d 845 (9th Cir. 2002).

Defendants also argue they may be prejudiced by co-defendants' confessions that implicate them when they do not have the opportunity for cross-examination, even though they have no specific support for this argument yet. This raises an issue under Bruton v. United States, 391 U.S. 123 (1968) (introduction in a joint trial of non-testifying co-defendant's confession violates the non-confessing defendant's Sixth Amendment right of cross examination and confrontation where the confession implicates the non-confessing defendant). The government responds that any statements made by a co-defendant at the time of arrest that the government seeks to have admitted will be fully briefed in the government's trial memorandum. The government says it will weigh the value of a co-defendant's confession against the complexity of a Bruton consequence. The government says at this time, there are no co-defendants' post-arrest confessions that the government will seek to admit into evidence unless they are properly redacted pursuant to

10 - OPINION

United States v. Parks, 285 F.3d 1133 (9th Cir. 2002). In this case, defendants can raise the Bruton objection again when more information is available to possible support the motion.

I deny the motion to sever defendants, subject to defendant's right to bring the motion again later if specific supporting information or circumstances develop.

**7.    Motion to Sever Defendants - Rios-Ruiz.**

Rios-Ruiz seeks an order severing his trial from those of other defendants. The government initially opposed the motion, but has recently withdrawn that opposition. Therefore, I grant the motion to sever as to defendant Rios-Ruiz, but deny it as to any other defendants who might have joined in Rios-Ruiz's motion, and any prior rulings to the contrary are vacated.

**8.    Motion for Bill of Particulars**.

Defendants seeks a bill of particulars because, they asserts, with respect to certain allegations of the superseding indictment, they are unable to identify the nature of the case against them because of the lack of specificity. Defendants seek identification of co-conspirators, dates, and overt acts.

Fed. R. Crim. P. 7(f) provides that the court may, in its discretion, direct the government to file a bill of particulars. The court's discretion is very broad and a refusal will be upheld unless the defendant can show a gross abuse of discretion which prejudiced the defendant's rights. Will v. United States, 389 U.S. 90 (1967). A bill of particulars may be warranted if the defendant lacks sufficient information to understand the charges against him, avoid surprise at trial, or plead double jeopardy in a subsequent prosecution. United States v. Robertson, 15 F.3d 862, 873-74 (9th Cir. 1994). In assessing the sufficiency of an indictment, a court should consider not only the text of the indictment, but all other discovery provided by the government. United States v. Giese, 597 F.2d 1170, 1180 (9th Cir. 1979); United States v. Clay, 476 F.2d 1211, 1215 (9th Cir. 1973).

I deny this motion. My review of the indictment indicates it contains the names of the active co-conspirators, the dates of illegal conduct, and a series of substantive

11 -    OPINION

accounts that relate directly to the seizures of controlled substances from the automobiles and residences of various co-defendants. Further, defendants have received substantial discovery, including CD ROMS covering the recorded conversations, with their transcripts and numerous photographs.

9. **Motion for Production of Brady Materials/Henthorn Review.**

Defendants seek an order pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Giglio, 405 U.S. 150 (1972), requiring the government to produce, no later than 14 days before trial, all exculpatory evidence regarding defendant and any cooperation agreement involving any witness it will call at trial. Defendants also seek an order, pursuant to United States v. Henthorn, 931 F.2d 29, 31 (9th Cir. 1991), requiring the government to examine the personnel files of government employee witnesses who may testify during motion hearings or at trial for evidence of any allegations that any officer has made a false statement or has a reputation for dishonesty. Defendants seek an order requiring the government to conduct its Henthorn review not less than 14 days before trial.

The government does not dispute that it has Brady and Giglio obligations, but declines to commit to having the material to defendant 14 days before trial. Rather, the government says that it "will, as it always does, endeavor to produce the material sufficiently in advance of trial to allow for appropriate cross-examination." The government says there is no case or statute that requires it to do otherwise. To the extent Brady material is contained in witness statements, the government says that the Jencks Act, not Brady, controls the timing of the disclosure of the witness statements and that witness statements are generally "unavailable until such witness has testified at trial." United States v. Taylor, 802 F.2d 1108, 1118 (9th Cir. 1986). Likewise, as to the Henthorn review, the government says it will immediately begin the process of having the files reviewed, but declines to consent to defendant's 14-day request.

I deny this motion, with leave to renew if problems develop with the government's compliance with Brady and Henthorn.

**10. Rule 404(b) Motion**.

Defendants seek an order directing the government to provide notice of its intent to use evidence of prior arrests, convictions, or bad acts, as required under Fed. R. Evid. 404(b) and Fed. R. Crim. P. 16. Defendants ask the court to require this notice be provided no later than 30 days prior to trial.

The government responds that it does not at this time intend to offer evidence of other crimes under Fed. R. Evid. 404(b). In the event continuing investigation discloses such evidence, the government will promptly notify all counsel.

Therefore, I deny this motion as moot.

**11. Jencks Motion.**

The defendants move the court for an order requiring the government to disclose, produce, and make available for examination and copying by defense counsel all statements of any witnesses the government expects to call at trial or any pretrial hearing, pursuant to the defendants' rights contained in the U.S. Constitution, <u>Jencks v. United States</u>, 353 U.S. 657 (1957), and Fed. R. Crim. P. 26.2. The defendants request production at the earliest possible time, but in no event later than 14 days prior to trial. Defendants note that the policy of the United States Attorney in this district has been to liberally follow the Jencks Act by providing law enforcement reports to the defense prior to trial, but that "[t]here have been occasions when individual prosecutors have invoked the Jencks Act to excuse failure to produce such reports." Def. Memo., p. 2.

The government notes that written witness statements need not be produced by the government until such time as the witness has testified. Even so, the government says that it "will endeavor to produce any and all witness statements fourteen days prior to trial." Gvmt. Memo., p. 2. The government does note, however, that there are sometimes circumstances where statements must be withheld until such time as a witness has testified, but does not believe at this time such circumstances exist in this case. The government also notes that it is not unusual for new witnesses to be found and/or additional documentary evidence uncovered shortly before trial. In such event, the government "will

endeavor to get any such material to counsel for the defendants promptly." Id.

I deny this motion, subject to defendants' right to renew it at a later time.

**12.     Motion for Production of Expert Witness Statements.**

Defendants seek an order directing the government, in accordance with the terms of Fed. R. Crim. P. 16(a)(1)(E), to provide defendants a written summary of the testimony of every expert witness the defendant intends to call under Fed. R. Evid. 702, 703, or 705 during its case-in-chief. Defendants want these summaries no later than 30 days before trial.

The government responds that it has provided to counsel the laboratory reports of the chemical analysis of all seized narcotics in this case and that the chemist who conduct the analyses is the only expert witness contemplated by the government. The testimony of the chemist is summarized in the laboratory report.

The motion is denied as moot.

**13.     Motion to Compel – Villarruel-Lopez**.

The motion to compel filed by Villarruel-Lopez, and all oral motions to the same effect, is DENIED (doc. 241).

## Conclusion

Based on the foregoing, this court rules as follows:

1. Motions of Vasquez-Chavez to suppress statements and evidence are DENIED (docs. 115 and 116, respectively).
2. Motion of Villarruel-Lopez to suppress evidence is DENIED and statements is DENIED as moot (doc. 185).
3. Motion of Salinas-Correa to suppress statements is GRANTED (doc. 220), and motion to suppress evidence is DENIED (doc. 222).
4. Motion to produce confidential informant filed by Vasquez-Chavez is DENIED (doc. 111).
5. Motion to sever counts filed by Vasquez-Chavez is DENIED (doc. 110).
6. Motion to sever defendants filed by Vasquez-Chavez is DENIED (doc. 112).

7. Motion to sever defendants filed by Rios-Ruiz is GRANTED as to Rios-Ruiz, and DENIED as to other defendants who joined in the motion (doc. 173).

8. Motion for bill of particulars filed by Rios-Ruiz is DENIED (doc. 183).

9. Motion for production of Brady materials and Henthorn review filed by Rios-Ruiz is DENIED, with leave to renew if problems develop with the government's compliance with its obligations (doc. 181).

10. Rule 404(b) motion filed by Rios-Ruiz is DENIED AS MOOT (doc. 179).

11. Jencks Act motion filed by Rios-Ruiz is DENIED, with leave to renew if problems develop with the government's compliance with its obligations (doc. 177).

12. Motion for production of expert witness statements no later than 30 days prior to trial filed by Rios-Ruiz is DENIED AS MOOT (doc. 180).

13. Motion to compel filed by Villarruel-Lopez, and all oral motions to the same effect, is DENIED (doc. 241).

IT IS SO ORDERED.

Dated this   14th   day of December, 2005.

　　　　　　　　　　　　　　　　　 /S/ James A. Redden
　　　　　　　　　　　　　　　　　　　James A. Redden
　　　　　　　　　　　　　　　　　United States District Judge

15 -   OPINION